IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

CHARTER COMMUNICATIONS VI, LLC,
d/b/a CHARTER COMMUNICATIONS, et al.

    **Plaintiffs,**

v.                            **Civil Action No. 5:04-1204**

MELVIN ELEAZER, et al.,

    **Defendants.**

<u>MEMORANDUM OPINION AND ORDER</u>

This is a breach of contract case between entities associated with Charter Communications, a cable provider, and defendants Melvin Eleazer and WDRL-TV, Inc., both involved in television broadcasting, over breach of an indemnification provision included in a agreement involving retransmission of a television broadcast signal over a cable system in the Beckley, West Virginia area. (Compl. at 1.)  Pending before the court is plaintiffs' motion for summary judgment.  (Docket No. 50.)

Charter has moved for summary judgment on the grounds that defendant Eleazer has a personal contractual requirement to indemnify them for copyright fees based on an Out of Market Retransmission Agreement he signed, or because he is liable through piercing of the corporate veil of WDRL-TV, Inc., an entity of which he is the sole corporate officer.  Charter also moves for summary judgment on the issue of whether the Agreement obligates defendants to indemnify plaintiffs for the attorney's

fees they have encountered in the course of prosecuting this case, and on the issue of whether defendant Eleazer is liable for the conduct of defendant WDRL-TV, Inc.  For the reasons discussed below, plaintiffs' motion (Docket No. 50) for summary judgment is GRANTED IN PART and DENIED IN PART.  Trial on all remaining issues is currently set for April 26, 2006, in Beckley, West Virginia.

## I.  Factual Background

In November 2004, plaintiffs Charter Communications VI, LLC, and Interlink Communications Partners, LLC, both doing business as Charter Communications ("Charter"), filed suit against WDRL-TV and Melvin Eleazer for breach of written contract.  Specifically, Charter claimed indemnification under an Out-of-Market Retransmission Consent Agreement executed by Charter and WDRL-TV, Inc. (hereinafter "the Agreement").  The Contract was signed by "Karen Broach GM/VP of Operations" for Charter and "Melvin Eleazer President/Owner WDRL-TV, Inc."

In its Complaint, Charter seeks contractual indemnification from WDRL-TV, Inc. and Eleazer for certain copyright charges that Charter claims to have incurred by retransmitting the WDRL television signal in West Virginia.  Charter alleges that the Agreement requires such indemnification and that they were required under law to pay it for the government.  Additionally, Charter seeks its legal fees for prosecuting this action.

-2-

## II.   Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56.  The moving party has the burden of establishing that there is no genuine issue as to any material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the burden then shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict for that party.

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find, by a preponderance of the evidence, that the plaintiff is entitled to a verdict . . . .

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 250-251. Significantly, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that

-3-

there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).  Finally, "[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

### III.  Analysis

For the reasons outlined below, there is a legally binding and valid contract requiring defendants to indemnify plaintiffs for $274,376.45 they paid to the U.S. Copyright Office.  The Agreement also includes a fee-shifting provision that obligates defendants to pay plaintiffs' legal fees incurred in this case. This said, because there are genuine issues of material fact as to who is liable under the contract, this case will continue to trial.

### A.    The Express Language of the Agreement Calls for the Station to Indemnify Charter.

Under West Virginia law, it is a well-settled principle that "it is the province of the Court, and not of the jury, to interpret a written contract." <u>See</u>, <u>e.g.</u>, <u>Stephens v. Bartlett</u>, 118 W. Va. 421, 424, 191 S.E. 550, 552 (1937).  Courts are to determine whether contracts are ambiguous as a matter of law. <u>See</u> <u>Toppings v. Rainbow Homes, Inc.</u>, 200 W. Va. 728, 733, 490 S.E.2d 817, 822 (1997).  Valid written agreements using plain and

-4-

unambiguous language are to be enforced according to their plain intent and should not be construed.  Cotiga Dev. Co. v. United Fuel Gas Co., 147 W. Va. 484, 490, 128 S.E.2d 626, 631 (1962). It is not the right or province of the court to alter, pervert, or destroy the clear meaning and intent of the parties as expressed in unambiguous language.  See Warner v. Haught, Inc., 174 W. Va. 722, 727, 329 S.E.2d 88, 94 (1985).

The language of the Agreement present in this case is unambiguous as to the major questions present in this case.  The text of the Agreement states that

> The Station agrees to indemnify and hold harmless from and against (i) any and all copyright fees associated with carriage of the Station's Broadcast Signal on Operator's systems listed on Attachment 1 and (ii) any and all costs, expenses, loss, liability, damage, actions, and/or claims arising from Operator's carriage of Station's signal based on Station's authority and rights (or lack thereof) to authorize Operator to carry its signal hereunder.

(Agreement ¶ 6, Docket No. 52 at 3.)

Defendant Eleazer does not contest that he signed an Agreement containing this paragraph.  As such, there is no dispute of material fact surrounding this paragraph's existence or inclusion in the Agreement.  Eleazer's disputes regarding this paragraph, including whether it was the result of mutual mistake, induced by fraud, as to who is bound by it, and as to how it is to be construed, will be discussed later.

**B.   The Indemnification Provision Included in the Contract Was Triggered When Charter Was Forced to Pay Copyright Fees.**

In 1992, Congress passed the Cable Television Consumer Protection and Competition Act, 47 U.S.C. §§ 521 et seq., which included a 'must-carry' provision in order to preserve the vitality of local television broadcast stations.  The "must-carry" provision provides that "each cable operator carry . . . the signals of local commercial stations" subject to statutory limitations concerning the operator's overall capacity.  See 47 U.S.C. § 534(b); 47 C.F.R. § 76.56.  The boundaries within which a station is considered "local" are defined by each station's "Designated Market Area" or "DMA" – an exclusive geographic designation based upon measured viewing patters by Nielsen Media Research.  See 47 U.S.C. § 534(h).  Must-carry gives broadcast stations the option to demand carriage on cable systems located in the same DMA as the station's FCC city of license.

The Cable Act also gives the broadcaster the option to forego an election of must-carry status and pursue a retransmission consent agreement with the cable operator.  See 47 U.S.C. § 325(b)(1).  As here, the transmission consent agreements may also extend beyond a broadcast station's DMA, see 47 U.S.C. § 325(b).  No one disputes that, for must-carry purposes, WDRL is located in the Roanoke, Virginia DMA, and that it cannot require

-6-

carriage in the Beckley DMA.

The parties agree that the consummation of a retransmission agreement between a cable operator and a broadcast station does not obviate copyright liability.  To the contrary, the existence of an agreement allowing secondary transmission of a broadcast station over a cable system triggers the requirement of royalty payment under the compulsory license established by the Copyright Act of 1976 (the "Copyright Act").

Through the Copyright Act, Congress created a compulsory license under which cable operators compensate the creators or owners of programming for retransmitting over cable systems programs that are also carried on over-the-air broadcast signals.  See 17 U.S.C. § 111(c) & (d).  The mechanism present in the Copyright Act avoids the transaction costs and delays associated with "clearing" cable retransmissions of every program occurring during a broadcast day.  See Cablevision v. MPAA, 836 F.2d 599, 602 (D.C. Cir. 1988).  Under the compulsory license, cable operators engaged in the secondary transmission of non-local or "distant" broadcast signals calculate and pay royalties based on the requirements of 17 U.S.C. § 111(d), the current and former FCC regulations referenced therein, and Copyright Office requires that systems identify stations carried "at *any* time during the accounting period."  See 37 C.F.R. §§ 201.17(f)(2), (3).  The full amount of royalties is owed notwithstanding any subsequent

dropping of channels.

> As to whether the alleged payments (to
> the extent they were made) were for validly
> owed Copyright charges associated with the
> rebroadcast of the WDRL signal, Charter also
> has the burden of proof.  Its witness,
> Jennifer Berry, has testified that her office
> processes 750-800 of [copyright forms] during
> a two week period every six months, that
> mistakes occur with the returns, and that
> Charter has overpaid in the past.  Charter
> should be required to prove the manner of
> calculation and the precision of its
> calculation should be subject to cross-
> examination.

(Docket No. 63 at 5.)

Further, plaintiffs note that in their Identification of

Expert Witnesses, defendants state that "the cable copyright

regime is extremely complex" and that "Defendants have no

personal knowledge of cable copyright requirements."  (Id. at 5.)

Defendants also noted that while they had not identified experts

in a timely fashion, they still "hope to locate and retain

experts who can validate many of Defendants' defenses . . .

including that Plaintiffs handled discretionary decisions in such

a manner as to increase the risk to, and exposure of, WDRL-TV,

Inc., including decisions as to programming, calculation and

payment of copyright charges.  In the event that Defendants can

locate suitable experts to present testimony on these matters,

Defendants will supplement this disclosure."  (Id.)

In Anderson v. Liberty Lobby, the Supreme Court held that "a

party opposing a properly supported motion for summary judgment

may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." 477 U.S. 242, 256 (1986). Defendants admit that they, themselves, do not understand the copyright regime at issue, and that as of the discovery cutoff, had not located any witnesses to testify in contravention of the plaintiffs' witness. They have not provided any affidavits or specific facts showing whether they had all of the needed coverages such that there is any genuine issue of material fact for trial. As such, regarding this issue, plaintiffs' motion for summary judgment is GRANTED.

> ### C. Defendants Cannot Dispute the Amount of Money Plaintiffs Paid to the U.S. Copyright Office.

Similarly, defendants lack the factual basis to challenge plaintiffs' determination as to the amount of copyright fees in question. Defendants contend that they should have the opportunity to cross examine plaintiffs' witness Jennifer Berry, who testified regarding the amount of money paid by Charter to the Copyright Office in her deposition. There, Berry testified that her office processes 750-800 of copyright forms during a two week period every six months, that mistakes occur with the returns, and that Charter has overpaid in the past.

In response to the argument that this information provides enough of a basis for this issue to proceed to trial, plaintiffs note that defendants had an opportunity to cross-examine Berry at her deposition. (See Docket No. 71 at 4.) Plaintiffs note that

defendants do not point to any instance where Berry testified that any error occurred in the calculations of copyright fees attributable to Charter in this case, and that defendants have presented no evidence that the Copyright Office has questioned the Statement of Account and calculations at issue here.  (Id.) Similarly, plaintiffs note that defendants also have presented no evidence that Charter has received any refund of the copyright fees that it paid as a result of its carriage of WDRL in the Beckley DMA.  (Id. at 4-5.)

As with the last issue, defendants have not met the burden of showing that some genuine issue of material fact precludes trial.  Defendants state that they deserve an opportunity to cross-examine plaintiffs' witness Berry as to how she calculated the monies due to plaintiffs.  However, defendants present no evidence that her calculations are incorrect.  See United States v. Moon, 1996 U.S. App. LEXIS 14955, at *8 (4th Cir. June 21, 1996).

Defendants do not contend that they have any affirmative testimony as to the amount of money that should have allegedly been paid.  Upon the court's review of the record and applicable case law, there is no genuine issue of material fact outstanding for trial.  Defendants must establish the existence of such a fact to defeat plaintiffs' motion.  See O'Reilly v. Board of Appeals, 942 F.2d 281, 285 (4th Cir. 1991) (holding that under

Fed. R. Civ. P. 56(e), an adverse party must set forth specific
facts showing that there is a genuine issue for trial.").  As
such, it is appropriate to grant plaintiffs' motion regarding the
issue of the amount of money in question.

>    **D.    No Contractual Defenses Asserted by Defendants Are
>            Supported under West Virginia Case Law.**

Defendants also contend that the contract between plaintiffs
and the Station is unenforceable on a number of grounds.  Having
reviewed these arguments and applicable case law, for the reasons
outlined below, the court finds that defendants' arguments are
incorrect.  Because the contract is enforceable against someone,
plaintiffs' motion for summary judgment regarding its
enforcability must be granted.

>    **1.    The Station Lacks the Factual Predicate
>            To Establish Mutual Mistake.**

Defendants' first defense is that the Agreement came about
as the result of mutual mistake of the parties.  Defendants
contend that even though Charter now states that WDRL-TV, Inc.
alone was under the mistaken belief that the Agreement would not
result in copyright charges on the order of magnitude alleged in
plaintiffs' Complaint, a jury could find that the parties shared
this belief at the time the Agreement was executed.  (See Docket
No. 63 at 9.)

Supporting their argument, defendants note that "Charter
stated in its responses to Defendant WDRL-TV, Inc's Second Set of

Interrogatories that it 'did not anticipate incurring any copyright fees as a result of its retransmission of [the WDRL-TV signal]' in the Beckley, WV DMA." (See id. at 10.) Defendants note that this fact is supported by the evidence of meager profits generated by this small television station ($14,089 in net income in 2003 associated with the station). Similarly, defendants note that the party at Charter who negotiated the Agreement stated that he had no idea of the nature of the copyright fees that could be generated as a result of adding WDRL-TV to Charter's lineup, and that he did not discuss with anyone at Charter the level of fees that might be incurred as a result of retransmitting the WDRL-TV signal. (See id. at 11.)

In their reply, plaintiffs note that the parties had a "meeting of the minds" as to the terms of the Agreement and that defendants' manifested consent to the Agreement prevents them from raising arguments such as these now. (See Docket No. 70 at 9.) Because any mistake in this case was unilateral on the part of defendants, plaintiffs indicate that such a mistake cannot be used to void a contract. See, e.g., McGinnis v. Cayton, 173 W. Va. 102, 110, 312 S.E.2d 765, 773 (1984); Warden v. Bank of Mingo, 176 W. Va. 60, 63, 341 S.E.2d 679, 682 (1985).

Further, plaintiffs also aver that defendants argument is really about a mistake of fact and not a mistake of law. (See Docket No. 71 at 11.) Under West Virginia law, a mistake of law

-12-

> consists of a mistaken opinion or inference
> arising from an imperfect or incorrect
> exercise of judgment upon the facts as they
> really are, and occurs when a person, having
> full knowledge of the facts, is ignorant of
> or comes to an erroneous conclusion as to the
> legal effect of his acts.

Webb v. Webb, 171 W. Va. 614, 618, 301 S.E.2d 570, 574-75 (1983).

Further, it is clear that a party to a contract "should not be

permitted to avoid obligations he undertook while laboring under

a mistake of law," because "every man of reasonable understanding

is presumed to know the law, and to act upon the rights, which it

confers or supports."  171 W. Va. at 618, 301 S.E.2d at 574.

Plaintiffs note that defendants have not taken the position

that they were mistaken about any fact that impacted the alleged

copyright liability, such as whether the Beckley D.M.A. was

geographically outside of the Station's local Roanoke D.M.A. or

the identity of third-party program providers from whom

defendants obtained certain program rights, but instead rely

solely on defendant Eleazar's ignorance or erroneous conclusions

regarding the legal effect of Charter's carriage of the Beckley

D.M.A.  (See Docket No. 71 at 11.)  Plaintiffs note that their

argument that this is a mistake of law is supported by the fact

that defendant Eleazar is of more than reasonable understanding

regarding this business.  Plaintiffs note that it is undisputed

that defendant Eleazar has been in the broadcast business for

more than thirty years, that he has always been in charge of

WDRL-TV, and that he built his business from the ground up.  (See id. at 12) (citing Eleazer's deposition).  Having reviewed the record applicable to this argument, insofar as this argument regards mistake of law, defendants cannot win.

Further, plaintiffs contend that even if this case involves a mistake of fact, mistakes of fact must be mutual for a contract to be voidable, and here, Charter was not mistaken about the possibility that copyright royalties would be incurred through the carriage of WDRL in Beckley.  In fact, because Charter was aware of these fees, Charter told the Station from the outset that it would not agree to retransmit WDRL without indemnification for copyright obligations.  (See Docket No. 71 at 12) (discussing Kelemen Dep. 134:13-17).

Further, the court accepts plaintiffs' contention that defendants have produced no evidence showing that Charter operated under any mistake of fact regarding this transaction. While defendants claim that in response to interrogatories Charter admitted that it "did not anticipate incurring any copyright fees as a result of its retransmission of [the WDRL-TV signal]," had defendants included the remainder of the sentence, it would be apparent that plaintiffs admitted this only because in the Out of Market Retransmission Consent Agreement defendant Eleazar "agreed that he and WDRL-TV, Inc. would indemnify Charter for any copyright fees."  (See Docket No. 71, Ex. 6 ¶ 1.)

-14-

The remainder of this sentence, as well as the indemnification provision of the Agreement, shows that Charter was aware copyright liability could be imposed.  Charter did not care about these copyright royalties because the Agreement provided that they would be paid by the Station.  Defendants argument to the contrary is disingenuous.

Because there is no genuine issue of material fact regarding defendants' mistake defense regardless of how it is framed, it is appropriate to grant plaintiff's motion for summary judgment regarding this issue.

### 2. No Reasonable Jury Could Determine that the Station Received No Consideration for Entering into the Agreement.

Defendants next contend that summary judgment is inappropriate because there was either no, or inadequate, consideration for the agreement between the parties.  Defendants note that, in his deposition, defendant Eleazar stated that his motivation for entering into the Agreement was to serve the public interest, and that he did not make "one dime" on the Agreement.  (See Docket No. 63 at 11.)  Defendants note that

> Agreeing to a zero-consideration, zero-cost, retransmission agreement to benefit the public in areas of West Virginia that otherwise would not have received the programming of *any* UPN-affiliated station is fully understandable, laudable, and rational. By comparison, agreeing to a zero-consideration retransmission at an annual *cost* of $274,376.45 is ridiculous.  The issue of whether WDRL-TV, Inc. received any or

-15-

> adequate consideration for the Agreement is a
> genuinely contested and triable question of
> fact that precludes summary judgment.

(See id.)

Defendants note that WDRL-TV, Inc. advertising sales materials did not announce that the signal could be viewed in West Virginia.  (Id. at 12) (discussing Eleazar Dep. at 235-36). WDRL-TV's signal carries "very little" national advertisement time.  (Id.)  Further, defendants note that during the time period in which Charter was carrying the WDRL-TV, Inc. signal, WDRL-TV, Inc. may have actually charged less for advertising than during periods in which the signal was not carried.  (Id.) Finally, defendants note that WDRL-TV offered the space available for advertising to Charter for sale, because defendants "only want[ed] to supply much needed UPN programming" to the Beckley area.  (Id.)

In support of this argument, defendants discuss Newell v. High Lawn Memorial Park Company, 164 W. Va. 511, 518-19, 264 S.E.2d 454, 458 (1980), for the preposition that failure of consideration in the law of contracts is "nebulous" and that "cases can be found where the slightest consideration is adequate to support a contract, while others can be found in which substantial consideration has been held to be insufficient. Here, because Charter is attempting to assess a fee of $274,376.45 against WDRL-TV, Inc., under circumstances that

indicate that WDRL-TV, Inc. received nothing in return, defendants assert that the question of whether there was adequate consideration to support the Agreement is a genuine issue of material fact that is best decided at trial.  (<u>See</u> Docket No. 63 at 13.)

In response, plaintiffs assert that it is a well-settled principle under West Virginia law that courts are not to inquire into the adequacy of consideration.  <u>See</u>, <u>e.g.</u>, <u>Janes v. Felton</u>, 99 W. Va. 407, 414, 129 S.E.2d 482, 484 (1925).  Having reviewed applicable law, it is clear that the principles expressed in <u>Janes</u> control:

> The law concedes to a party her right to make her own contract, if lawful, and will not determine whether her bargain was wise or unwise.  The law does not permit a comparison of the pecuniary value of the benefit received with that of the obligation incurred . . . . The validity of the party's obligation does not depend on the benefit to her . . . being equal in value to the full amount [of the other party's obligation].  It suffices at law if she was benefitted . . . even though the benefit was slight.

As plaintiffs note in their reply, the <u>Newell</u> case relied on by defendants has its intellectual moorings in cases in which courts found that no consideration had been given by one party, and not that the consideration given was inadequate.  <u>See</u>, <u>e.g.</u>, <u>Hopkins v. Wilkinson</u>, 115 W. Va. 32, 37-38, 174 S.E. 564, 566 (1934) (finding that the contract required separate performances by one party and was therefore separable into two contracts, and

-17-

that the "past performances" under the first contract did not
constitute consideration given under the second contract); <u>Cox v.
Davis</u>, 85 W. Va. 604, 608, 102 S.E. 236, 238 (1920) (holding that
the contract was "void and unenforceable for lack of
consideration").

Similarly, it is clear that defendants received some
consideration through the allocation of some of Charter's limited
channel capacity.  Defendant Eleazar notes that he has never been
paid by any cable operator that has retransmitted WDRL's signal.
(<u>See</u> Eleazar Dep. 232:9-11.)  This accords with the general rule
that cable operators typically do not compensate broadcast
stations for carriage rights under retransmission consent
agreements.  <u>See</u> Lorna Veraldi, <u>Newscasts as Property</u>, 46 Fed.
Comm. L.J. 469, 486 (1994).  Plaintiffs note that Charter's
carriage of WDRL's signal resulted in expanded reception of WDRL
to viewers who could not obtain WDRL over-the-air, and as such,
opened the possibility for increased advertising revenues.

That defendants did not use derive any benefit from their
increased viewership does not negate the fact that something was
given to them.  As it is clear that there was consideration under
the contract, and as under West Virginia law it is improper for
courts to engage in after-the-fact review as to whether
consideration provided was inadequate, it is proper to grant
plaintiffs' motion for summary judgment relative to this defense.

-18-

> **3.    No Reasonable Jury Could Determine that**
> **the Station Was Fraudulently Induced**
> **Into the Agreement.**

Defendants' final defense is that they were fraudulently induced to enter into the Agreement.  (<u>See</u> Docket No. 63 at 13.) Defendants aver that the following facts establish a genuine issue of material fact as to whether the Agreement was produced as a result of fraud perpetuated by plaintiffs.  First, defendants note that Charter's internal documents establish that Charter was aware that there would be large fees establish with the retransmission and that it purposefully withheld this information from WDRL-TV, Inc.  (Doc. No. 63 at 15.)   Defendants aver that Charter employees were aware that significant copyright royalties could be incurred as a result of the Agreement and that Charter employees withheld this fact from the defendants.  (<u>Id.</u>) Defendants assert that, in the context where Charter knew that defendants expected this Agreement to be at no cost to WDRL-TV, Inc., this could constitute the withholding of a material fact, an element of a fraudulent inducement claim as outlined under <u>Muzelak v. King Chevrolet, Inc.</u>, 179 W. Va. 340, 344, 368 S.E.2d 710, 714 (1988).

Further, defendants aver that this withholding of a material fact was compounded by Charter's addition of an indemnification provision to its ordinary form retransmission consent agreement. (<u>Id.</u>)  Defendants aver that the indemnification provision leads

-19-

to a reasonable inference that Charter was trying to ensnare WDRL-TV, Inc., into agreeing into an outrageous contract by doing nothing to correct WDRL-TV, Inc.'s stated expectations.  (<u>Id.</u>) Defendants contend that this information is significant because Charter has admitted that no similar indemnification clauses occur in other retransmission consent agreements for the Beckley D.M.A.  (<u>Id.</u>)

Essentially, as plaintiffs note, defendants' theory is that Charter knew that the carriage of WDRL in the Beckley D.M.A. would have copyright implications, that Charter must have known the amount of copyright royalties that might be incurred before the parties entered into the Agreement, and that no one at Charter disclosed either of these facts to defendant Eleazar. (<u>See</u> Docket No. 71 at 13-14.)  Defendants do not assert that Charter made any affirmative misstatements to Eleazar.  Without affirmative misstatements, the law in <u>Muzelak</u> is inapplicable. <u>See</u> 179 W. Va. at 345, 368 S.E.2d at 715.  Similarly, defendants do not assert that Charter owed WDRL-TV, Inc. or defendant Eleazar a fiduciary duty, which would allow defendants to prove fraud under a lesser standard.  Without either of these things being applicable, the court rejects defendants argument under <u>Welch Publishing Company v. Johnson Realty Company</u>, 78 W. Va. 350, 89 S.E. 707 (1916) in its entirety.

Further, although defendants argue otherwise, it is clear
that defendants' fraud-centered defense related to Charter's
failure to disclose a material fact can constitute only a
constructive, and not an actual, fraud.  Under West Virginia law,
"constructive fraud is generally reserved for those cases where a
fiduciary relationship exists between the parties or the fraud
violates an important public policy concern."  See Cordial v.
Ernst & Young, 199 W. Va. 119, 132, 483 S.E.2d 248, 261 (1996).

First, although defendants stress the word "generally" in
this phrase, there is no reason to suspect that this case, in
which the Agreement involved was between these sophisticated,
savvy parties engaged in an arms-length commercial transaction,
would fall outside of this rule.  It is undisputed that defendant
Eleazar is an experienced television broadcaster who holds a
degree in broadcast management and a number of FCC licenses.
Evidence in the record establishes that, in the course of dealing
incident to this transaction, defendant Eleazar indicated through
his actions that he was aware of copyright issues generally and
relying on his own judgment to deal with them (e.g. attempting to
obtain copyright clearances, warning Charter not to carry WDRL in
the Beckley market until he obtained the necessary clearances,
etc.)

Further, the court accepts plaintiff's argument that the
fraud defense in this case is based in its entirety on

defendants' speculation and conjecture.  In order to succeed,
defendants would have to prove that Charter knew, but defendant
Eleazar did not know, that there was a possibility that Charter's
carriage of WDRL could result in copyright liability.  Under the
facts present in the record, most notably the Agreement itself,
defendants cannot do this.  As plaintiffs have noted, in the
Agreement the parties anticipated the prospect that copyright
fees might be incurred, and chose to place the responsibility for
any such fees on defendants.  Because this liability is included
in the Agreement, it is nonsensical to think that defendants,
sophisticated commercial parties who had the support of lawyers
when they entered into this transaction, can disclaim any such
liability now.  Further, at a number of places in the record,
defendant Eleazar makes statements to the effect that he will
take care of any copyright issues incident to the rebroadcast of
WDRL-TV's signal.  Given these materials, any suggestion that
defendant Eleazar was not aware of the prospect of copyright
liability is nonsensical.

        The court similarly accepts plaintiffs' contention that
there is no evidence in the record that, prior to entering this
Agreement, Charter knew the amount of copyright royalties in
question and failed to tell defendant Eleazar.  It is undisputed
in the record that Charter did not estimate the amount of fees in
advance.  (See Docket No. 71, Ex. 3 at 61:6-13; Ex. 5 at 97:19-

                              -22-

98:6.)  One Charter employee testified that he had no idea of how much the potential fees might be, and that he had no reason to inquire because Eleazar had agreed to be responsible for any copyright fees.  (Id., Ex. 5, 29:9-30:13; 70:14-71:9.)  A second Charter employee testified that Charter did not begin to prepare calculations of the copyright fees until mid-August 2004, long after the parties had entered into the Agreement and such fees were due for both involved reporting cycles.  (See Docket No. 54, Berry Dec. ¶ 5.)  Given that defendants have not produced any evidence contradicting these accounts, there is no genuine issue of material fact as to whether Charter knew of these fees and failed to communicate such information to defendant Eleazar.

### E.    The Agreement Contains Provisions Obligating the Station to Pay Attorney's Fees

In their motion for summary judgment, Charter also contends that the Agreement contains a provision obligating the Station to play Charter's costs and attorney's fees.  (See Docket No. 52 at 18.)  Specifically, Charter contends that two provisions of Agreement obligate the Station to pay Charter's costs and attorney's fees.  (See id. at 19.)  The Copyright clause of the Agreement provides that the Station agrees to "indemnify and hold Operator harmless from and against

> (ii) any and all costs, expense, loss,
> liability, damage, actions, and/or claims
> arising from Operator's carriage of Station's
> signal based on Station's authority and

-23-

>           rights (or lack thereof) to authorize
>           Operator to carry its signal [under the
>           Agreement.]

(See Agreement ¶ 6.)   The Indemnifications clause in the

Agreement's General Terms and Conditions states that

>           [E]ach party shall . . . keep the other party
>           harmless and indemnify said other party
>           against and from any and all claims, demands,
>           losses, costs, damages, suits, judgments,
>           penalties, expenses and liabilities of any
>           kind or nature whatsoever arising directly or
>           indirectly out of the acts, omissions,
>           negligence, or willful misconduct of the said
>           party.

(See id., General Terms & Conditions.)

      Plaintiffs rely on Harris v. Allstate Insurance Company, 208

W. Va. 359, 362, 540 S.E.2d 576, 579 n.12 (2000), in framing

their argument.   In Harris, the WVSCA found that language in a

collection agreement that provided that one party would

"indemnify and hold [the other party] harmless from and against

any and all judgments, awards, liabilities, settlements, or other

costs arising from such claim or other action" "unambiguously

provides for the recovery of attorney fees and costs associated

with the other action."   See id.

      For their part, defendants attempt to limit Harris to

litigation with third parties.   (See Docket No. 63 at 19.)

Further, defendants argue that the Harris court remanded the

issue of attorney's fees to the circuit court for consideration

of whether the language of the involved agreement was broad

-24-

enough to cover plaintiff's request for attorney's fees.  (<u>Id.</u>)
(discussing <u>Harris</u>, 208 W. Va. at 363, 540 S.E.2d at 580).

    In this case, the Copyright provision is broad enough to
include plaintiffs' claim for attorney's fees.  The provision
refers to "any and all costs . . . based on Station's authority
and rights" to carry its program.  The indemnification provision
provides that the parties are responsible for "costs" "or any
kind or nature whatsoever arising directly or indirectly out of
the acts [or] omissions of the said party."

    Here, plaintiffs made a sound business choice to pay the
Copyright Office money that all the evidence in the record
suggests that was owed to it.  Rather than litigating against the
Copyright Office frivolously, Charter made the sound choice to
pay the royalties owed and come back against defendants under the
indemnification provision.  As the Agreement contemplates the
Station being responsible for "any and all fees," the Station --
and therefore one or both of the defendants -- is responsible for
the fees plaintiffs expended arising from this action by virtue
of its subject matter.  The indemnification provision is broad
enough to include this kind of expense.  As such, it is
appropriate to grant plaintiffs' motion for summary judgment as
to whether the Agreement envisions defendants being responsible
for their attorney's fees in this action.

### F.   As to Any Other Remaining Issues, Plaintiff's Motion for Summary Judgment is Denied.

As the court indicated in its Memorandum Opinion and Order on defendant Eleazer's motion for summary judgment, the court is unable at this time to apportion liability between the two defendants named in this case.  (See generally Docket No. 93). For the reasons indicated in that Memorandum Opinion, insofar as plaintiffs' motion for summary judgment raises any issues not directly discussed in this Memorandum Opinion and Order, it is denied.

### IV.   Conclusion

For the reasons outlined above, plaintiffs' motion for summary judgment (Docket No. 50) is GRANTED IN PART and DENIED IN PART.  The outstanding issues in this case will be dealt with at trial.  This trial is currently scheduled for 9:30 a.m. on April 26, 2006 in Beckley, West Virginia.

The Clerk is directed to send copies of this Memorandum Opinion and Order to all counsel of record.

IT IS SO ORDERED this 26th day of January, 2006.

ENTER:


David A. Faber
United States District Judge

-26-