```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT BECKLEY
```

**CHARTER COMMUNICATIONS VI, LLC,**
**d/b/a CHARTER COMMUNICATIONS,**
**et al.,**

    **Plaintiffs,**

v.                                        CIVIL ACTION NO. 5:04-1204

**MELVIN ELEAZER, et al.,**

    **Defendants.**

### MEMORANDUM OPINION AND ORDER

Pending before the court are the Motion to Alter or Amend the Court's Judgment Order filed by plaintiffs Charter Communications VI, LLC, and Interlink Communications Partners, LLC, (collectively "Charter"), (Doc. No. 167), and the Motion to Set Aside Default Judgment filed by defendants WDRL-TV, Inc., ("the station"), MNE Broadcasting, LLC, of Virginia ("MNE Virginia"), and Melvin Eleazer, (Doc. No. 172).  For the reasons that follow, the court grants plaintiffs' motion and denies defendants' motion.

### I.  Background

In the course of the six years since this action was filed, the court has developed a sufficiently detailed factual and procedural history in its prior opinions as to make a full recounting of the same here unnecessary.  (See Doc. Nos. 89, 93, 94, 131, 134.)  Suffice it to say, after the court granted plaintiffs' motion to amend the Complaint in May 2007, and after

service of the Amended Complaint was effected, the court granted the parties' joint consent motion to hold all proceedings in abeyance as a result of a May 2007 stipulation entered in the Bankruptcy Court for the Western District of Virginia, where WDRL-TV was a debtor.  (See Doc. Nos. 134-140.)  Pursuant to that stipulation, defendants were to sell the station for a sum of approximately $6,000,000, out of which defendants agreed to pay Charter's claim, attorney's fees, and interest in full.[1]

In an April 17, 2008, order, the Bankruptcy Court determined that defendants had breached their obligations under the May 2007 stipulation.  (Doc. No. 177 Ex. 2.)  Upon Eleazer's assurance that he had secured another buyer for the station, however, the Bankruptcy Court approved a November 2008 stipulation providing for payment of Charter's claim and expenses out of the sale of WDRL-TV.  (Doc. No. 177 Ex. 3.)  This stipulation, which was signed by Eleazer personally and on behalf of his co-defendants, stated that the Amended Complaint had been filed, adding MNE Virginia as a party and adding a claim of fraudulent conveyance against it and Eleazer.  (Id.)

When this sale also fell through, the court, on May 8, 2009, ordered Eleazer and MNE Virginia to answer the Amended Complaint no later than July 1, 2009.  (Doc. No. 152.)  Defendants neither

---

[1] As plaintiffs observe, the May 2007 stipulation specifically references the Amended Complaint filed in this court.  (Doc. No. 177 Ex. 1.)

filed answers, nor sought an extension of time in which to do so. On August 4, 2009, the Clerk of the court entered default against MNE Virginia and Eleazer, and shortly thereafter, the court set a hearing on damages for September 8, 2009.  (Doc. Nos. 155, 156.) Although defendants' longtime attorney, Howard Beck, moved to continue the hearing on defendants' behalf, Eleazer appeared at the hearing with new counsel Perry Oxley and Monika Hussell.[2] (Doc. No. 164.)

As was explained on the record at the hearing and in plaintiffs' September 4, 2009, supplemental pre-hearing brief, Eleazer created a new Florida limited liability company, MNE Broadcasting, LLC, ("MNE Florida"), on August 10, 2009.  On August 20, 2009, MNE Virginia was merged into MNE Florida, with the latter company as the surviving entity.  In an August 26, 2009, filing with the Federal Communications Commission, Eleazer sought the FCC's consent to a transfer of defendants' chief asset – the FCC licenses under which WDRL-TV operated – from MNE Virginia to MNE Florida.  (Doc. Nos. 160, 167.)  After hearing from counsel for both parties at the September 8, 2009, hearing, the court entered judgment in the amount of $1,111,059.14, plus interest, attorney's fees, and costs, in favor of plaintiffs and against Eleazer and MNE Florida, as successor in interest to MNE

---

[2] Mr. Oxley and Ms. Hussell later withdrew due to a conflict of interest.  (Doc. No. 176.)

Virginia. (Doc. No. 163.) The court noted its expectation that defendants would file a motion to set aside the default judgment (Doc. No. 179), and the instant briefs followed.

## II. Analysis

A. **Motion to Set Aside Default Judgment**

Rule 60(b) of the Federal Rules of Civil Procedure provides that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . ."[3] Fed. R. Civ. P. 60(b)(1). As a preliminary matter, a party must also show "that his motion is timely, that he has a meritorious defense to the action, and that the opposing party would not be unfairly prejudiced by having the judgment set aside."[4] Park

---

[3] Rule 60(b) enumerates six grounds that may provide the basis for opening a default judgment, including "(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party . . . ." Fed. R. Civ. P. 60(b). Defendants rely in part upon this subsection, arguing that attorney Beck's continued representation of them after his Virginia law license had been administratively suspended in March 2009 amounted to a fraud upon the court. (Doc. No. 175 at 11-13.) It is clear, however, that Rule 60(b)(3) applies to wrongful actions committed by an *opposing party*, and not by one's own attorney. See Fed. R. Civ. P. 60(b)(3); Sherman v. Verizon Virginia, Inc., 220 F.R.D. 260, 262 (E.D. Va. 2002).

[4] As the court noted in Nat'l Credit Union Admin. Bd. v. Gray, 1 F.3d 262, 264 (4th Cir. 1993), "exceptional circumstances" is occasionally noted as a fourth threshold requirement. See Werner v. Carbo, 731 F.2d 204, 207 (4th Cir. 1984)(cited in Gray, 1 F.3d at 264); and Compton v. Alton S.S.

4

Corp. v. Lexington Ins. Co., 812 F.2d 894, 896 (4th Cir. 1987). Courts generally address these latter three considerations before proceeding to consider the moving party's stated reason for opening the default judgment. Nat'l Credit Union Admin. Bd. v. Gray, 1 F.3d 262, 266 (4th Cir. 1993)("Once the movant has met the threshold showings, he must satisfy one of the six enumerated grounds for relief under Rule 60(b)."). Where a party is unable to establish justification, however, the court may bypass the threshold analysis. Robinson v. Wix Filtration Corp., LLC, 599 F.3d 403, 411 n.9 (4th Cir. 2010).

Assuming, for the purposes of the court's analysis, that defendants would be able to meet the threshold requirements of the Rule 60(b) analysis, their motion must nonetheless fail for lack of a permissible reason for opening the default judgment.[5] Defendants, relying largely on their attorney's condition as a sufferer of Parkinson's Disease, assert that his failure to file an answer on their behalf amounts to excusable neglect.

As the Fourth Circuit Court of Appeals has explained, a judgment entered by default sets competing interests against each

---

Co., 608 F.2d 96, 102 (4th Cir. 1979).

[5] It is worth noting that, although there is no dispute that defendants' motion was timely filed, it is far from certain that defendants can establish a meritorious legal defense, the presence of exceptional circumstances, and a lack of prejudice to plaintiffs. As explained above, however, the court need not address these elements.

other; the court must weigh "its strong preference for deciding cases on the merits against countervailing interests in finality and in preserving the court's ability to control its docket." Heyman v. M.L. Marketing Co., 116 F.3d 91, 94 (4th Cir. 1997)(citing Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808 (4th Cir. 1988)). In Augusta, the court established two analytical approaches to guide courts in evaluating Rule 60(b) cases: "(1) those that involve a blame*less* party and a blame*worthy* attorney, and (2) those that involve a blame*worthy* party." Heyman, 116 F.3d at 94 (emphasis in original).

Ordinarily, where default was entered against a blameless party due to the fault of his attorney, the default judgment should usually be set aside, as the court's interest in reaching the merits of the case will control. Id. In such cases, the attorney's negligence qualifies as the "mistake" or "excusable neglect" that may be pardoned under Rule 60(b). Id. Judgments will not be set aside freely where the party's own negligence caused the dismissal, however. Where the party, himself, is at fault, the party must adequately defend his conduct in order to establish excusable neglect, as the controlling factor is the court's interest in finality and efficiency. Id.

Regardless of his affidavit to the contrary, there can be no question that Eleazer was aware of the pendency of the Amended

Complaint far in advance of August 17, 2009, the date on which he claims to have been informed of it.  Eleazer personally signed the November 2008 stipulation, which not only referred to the Amended Complaint, but also specified the new claim it alleged against MNE and Eleazer, as well as the fact that the pleading had already been filed.  Moreover, the potential liability contemplated in the Amended Complaint was central to the parties' negotiations in the bankruptcy proceedings, and the document was referred to in numerous bankruptcy filings.

Given Eleazer's participation in the parties' negotiations, as well as his significant experience with the legal system over the years, it is safe to assume he understood the implications of Charter's filing of the Amended Complaint.  He has given the court no reason to excuse his disregard of that pleading, and has therefore failed to satisfy the requirements of Rule 60(b). Robinson, 599 F.3d at 413 (citing State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 177 (2d Cir. 2004)("A party that fails to act with diligence will be unable to establish that his conduct constituted excusable neglect pursuant to Rule 60(b)(1).").

**B.   Motion to Alter or Amend the Court's Judgment**

Also pending is plaintiffs' motion to amend the court's judgment to provide for the appointment of a receiver.  (Doc. No. 167.)  Plaintiffs detail what they contend is Eleazer's history

of attempting to shelter defendants' chief asset – the FCC licenses – and argue that the appointment of a receiver to liquidate and manage defendants' assets is necessary in order to satisfy the court's judgment. (Doc. No. 168.) Defendants filed no response to the motion.

As a result of the court's grant of default judgment, Charter holds judgment against defendants for fraudulent conveyance under the West Virginia Uniform Fraudulent Transfers Act ("WVUFTA"), West Virginia Code §§ 40-1A-4(a), 40-1A-5. Section 40-1A-7 of the WVUFTA allows for the appointment of a receiver to take charge of the asset transferred or of other property, and, at the court's order, to levy execution on the asset or its proceeds. W. Va. Code § 40-1A-7. Furthermore, a federal court enjoys equitable powers to appoint a receiver where the appointment is necessary "'to protect a judgment creditor's interest in a debtor's property when the debtor has shown an intention to frustrate attempts to collect the judgment.'" Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc., 999 F.2d 314, 317 (8th Cir. 1993)(quoting Leone Indus. v. Assoc. Packaging, Inc., 795 F. Supp. 117, 120 (D.N.J. 1992)).

In support of their motion to set aside the default judgment, defendants go to great lengths to explain their handling of the FCC licenses under which WDRL-TV operates, their handling of the proceedings before the Bankruptcy Court, and the

circumstances under which MNE Virginia and MNE Florida were created. Although unwilling to discount all of defendants' explanations in this regard, the court cannot help but be deeply troubled by the manner in which defendants have conducted their affairs during the pendency of this litigation. Since the commencement of this suit, Eleazer has transferred control of the station's FCC licenses twice to new companies established for purposes of effecting the transfers. His explanation for the transfer to MNE Florida – that he and his wife were contemplating a move to Florida – wears particularly thin, considering the remarkable timing of the transfer, immediately after default had been entered against Eleazer and MNE Virginia.

    Although Eleazer has attempted to express his good faith by consenting, on MNE Florida's behalf, to the jurisdiction of this court, this concession came only upon threat of default judgment after Eleazer had acted to effect the transfer of the licenses. Furthermore, Eleazer has twice evinced an inability or unwillingness to follow through on efforts to liquidate assets in order to satisfy Charter's claim in this matter. It has taken six years to bring about a resolution to this litigation, with defendants bearing the responsibility for much of the delay. Deeming it necessary to carry out the court's judgment, the court grants the motion to alter or amend its September 8, 2009, Judgment Order. (Doc. No. 167.)

### III. <u>Conclusion</u>

Defendants having failed to carry their burden under Federal Rule of Civil Procedure 60(b), the court **DENIES** their motion to set aside the default judgment in this matter.  (Doc. No. 172.) The court further **GRANTS** plaintiffs' motion to alter or amend its September 8, 2009, Judgment Order, (Doc. No. 167), and enters an Amended Judgment Order on this date.

The Clerk is directed to remove this action from the court's active docket and to forward copies of this Memorandum Opinion and Order to counsel of record.

It is **SO ORDERED** this 18th day of June, 2010.

ENTER:

*David A. Faber*

David A. Faber
Senior United States District Judge